to welcome some distinguished visitors to this court. First, we are pleased to be joined this morning by Judge Bruce Hendricks, who is visiting with us, sitting by designation from South Carolina. I also understand that we have members of the Franklin Military Academy in Richmond with us. Could you identify yourselves? Welcome. We are very pleased to have you here. Thank you. We are ready for oral argument in our first case, United States v. Muldrow. Ms. Merchandani? Merchandani, yes. Thank you. Good morning, Your Honors. May it please the Court. The issue in this case is whether the district court was authorized to use the same criminal history category it had applied at the original sentencing to calculate appellants' amended guideline range under 3582. The same question was presented to this court in 2010 in Munn, and this court held that, yes, the district court was authorized to use the same criminal history category it had originally used. Did you recognize that Munn can be abrogated, that circuit precedent can be abrogated? It can be abrogated. Is the question whether that happened here? Yes. So the only thing that has changed since Munn is that in 2011 the Sentencing Commission added commentary to Section 1B1.10, subsection A, and the commentary said that the applicable guideline range should be calculated before consideration of any departure or any variance. It also included in there, though, that the district court held in Munn, and in Munn this court relied expressly on the application instructions in 1B1.1 and said that it left no doubt that a criminal history departure under 4A1.3 is part of the applicable guideline range. So this court's holding is in contrast to the commentary. Now, the commentary is also in contrast to the text, which this court interpreted in Munn to mean the post-4A1.3 determination guideline range. So for your position to be correct, we would have to conclude that the commentary is contradictory to the statute. Not the statute. To the guideline. And you're relying for your argument that it is contradictory, you're relying on Munn? Or you're relying on a textual argument? Both. I think between Munn, Goins, Capers, and Schell, I think it's an inescapable conclusion that Munn is still binding. Well, it's interesting that you should not mention Williams. Williams would seem, I mean, this case seems to be very much like Williams, which I notice you did not include in your list. No. And why not? Was Williams cited in the government's brief? I'm asking you about Williams. I don't, I'm not familiar with Williams. Well, okay. A sentencing guideline promulgated an amendment 780 to clarify, to add a clarifying interpretation to 3582C2. Was this the 780 which abrogated Hood? Correct. Yes. Okay. No, I'm familiar with that. That was, that was a revision to the text, though. It was a revision to the text of B2C. It added text. It's a different amendment, but it also reinterpreted Goins. Well, I don't see how it changed anything in Goins. It said, it amended the text, and had the commission, in this case, amended the text, I don't think we would be here. We would, we would agree text can abrogate a Fourth Circuit case. It can abrogate precedent. But commentaries also can be binding. Yes, as long as it's consistent with the text. Right, so you're relying on the inconsistency between, your perceived inconsistency between the amendment and the guideline. Yes. Okay. And the guideline, as interpreted by this Court, and Munn. Well, I don't think that adding that helps you. I mean, I think you have to, it has to be a textual argument. Because the very question is whether Munn has been abrogated. So you can't assume that Munn hasn't been abrogated in your answer. That's fine. I think if you, if you, but if you read Munn to the extent that this Court interpreted the application instructions, actually, which was not abrogated, the application instructions show the 10-step process, and show very clearly that in the sixth step, criminal history category is determined under Chapter 4, Part A. Then when you come down to the sixth, sorry, seventh step, is the guideline range. That doesn't, that holding of Munn doesn't change. Okay, and I'm sorry to, I'm sorry to hone in on this, but in Williams, we clarified go-ins to mean that if a clarifying amendment conflicts with our precedent, it has the effect of changing the law in our circuit. Yes, but it, in that case, it was the text that was changed. Right, and here the text is not changed. The text is not changed at all. So your argument has to be that Munn simply applied the text. Yes. And it's the text that's the, the text of the guideline is the basis of your argument. As this court held in Shell, when you have comment, when you have a inconsistency between the commentary and the text, the text controls. Now, Capers, I think go-ins, Capers is really the best example here, because in Capers, it was the opposite of the situation we're in now. The guidelines were amended, the commentary to the guidelines were amended in a way that was helpful to the defendant. The defendant got a three-level manager enhancement based on the management of property, not people. Comment to the guideline was subsequently added, which said you don't get a three-level enhancement for managing property. You only get the enhancement for managing people. The defendant brought a 3582 motion to have the three-level enhancement removed. The government opposed it by saying that commentary conflicts, and it cannot be applied because it was not retroactive. It cannot be applied to this defendant, and this court agreed with the government there. We're in the opposite situation now, and to be faithful to Capers, this court has to find for the defendant here. Otherwise, it would be doing the opposite thing. So just because the commentary is helpful to the government, well, when the commentary is helpful to the defendant, it wasn't applied retroactively. So we're asking that the same be held here. Between Munn, Goins, Capers, and Shell, we think the court would have to stray pretty far afield from its binding precedent to rule with the government, including Munn, even if you agree that Munn has been abducted. It's interesting, though. We were in the minority view in Munn. Our decision in Munn and the Second Circuit – I've forgotten the name of the Second Circuit case. McGee. McGee. Thank you. We're the only two circuits to allow what was done in Munn, which was to apply the departure after other departures were taken into consideration. There was also the Third Circuit in Fleming.  And the Ninth and the Eleventh. The Sentencing Commission revised the commentary to specifically reject those interpretations, and the Second Circuit, which is the one I remember as clearly being in line with Munn, has since reversed that decision precisely because the commentary was so clear that our interpretation wasn't the correct one. In Monsnez, which reversed McGee, it said that Amendment 759 abrogated its previous decision, which is what the government wants you to find here. This argument was not raised. The argument that was raised and that was placed before the Second Circuit was whether or not the Sentencing Commission had exceeded its authority under the Sentencing Reform Act by not getting congressional approval. This issue, the conflict between the commentary and the text, has not been raised in any other court. This is an issue, first impression, in this court or in any other circuit. So I don't think Monsnez helps at all. I think it's neutral. Your position has to be that when the commentary was revised, the commission just went too far. Yes. I think if they wanted to accomplish the same thing, and they're still free to do so, they need to revise the text. That is a simple fix here, is they revise the text. The text controls. You can't just, you know, revise the commentary in a way that conflicts with what actually most of the circuit courts were on the side of the Fourth Circuit. Well, it seems like you have a fairly, the issue's fairly simple. Either the text says what you say it says and what it says in Mons, or it doesn't, because the commentary can't override the text. Right. Maybe that's an oversimplification, but that seems to me to be the issue. So I'm a little mystified, parenthetically, that we've had this avalanche of 28 J letters after the fact. It seems like to me it's a fairly simple case. I also think it's simple. I don't know what to say about the real 28 J letters. That was just, they were filed and there were responses to sort of clarify some of the record. The District Court in Maryland, I should say that this is an issue of first impression in any circuit court, but in the District of Maryland, in every single case but one, the court has ruled in our favor, and one of the 28 J letters listed five, there's actually six cases in which we made the same arguments and the District Court agreed with us that Mons still controls. But in a different, kind of just looking at it from a different angle, how does Mons survive the Senate's and Commission's adoption of Amendment 759? How does it survive? It survives for the same reasons that the defendant's case about the amendment to 651 survived in Mons, which is that the commentary was added that conflicts with the text. And if the commentary conflicts with the text, the text controls. You haven't specifically identified the conflict. Why don't you do that? Yes, I will. The conflict is that Section A1, which provides the authority, this is the first of the two steps to decide if somebody's eligible. The sentencing commission says in the case in which a defendant is serving a term of imprisonment and the guideline range applicable to that defendant has subsequently been lowered, the court may reduce the defendant's sentence. Okay, so the key language there is the guideline range applicable to that defendant has been lowered. The commentary, then in the next section, B1, once you've decided eligibility, you go to discuss the extent of the reduction. It says, in making such determination, the court shall substitute only the amendment listed in subsection D for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected. Now, what the Supreme Court said in Freeman is the purpose of this was to… Just stick with your textual argument. Okay, I'll stick with it, stick with it. Okay, now the commentary. The commentary only revises the first, the eligibility determination under subsection A1. It amends the, it defines applicable guideline range. Yes, and that phrase doesn't show up in subsection B1. And that matters because? Well, I think it's a more fine-tuned argument about sort of the commentary conflicting. The commentary for Application Note 1 says, in A1, when you're determining eligibility, you look at the guideline range that corresponds to the offense level and the criminal history determined pursuant to 1B1.A before any departure or any variance. Okay, so that's the eligibility determination. There's no question here the appellants were eligible. The Application Note for 2, which is the commentary for B1, which when you talk about the extent of the reduction, it doesn't contain any of that language. It says, in determining the amended guideline range under B1, which is extent, the court shall substitute only the amendments listed in subsection D for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected. Now, so the language, which is the focus of this entire argument, is tucked into Application Note 1, which only refers to subsection A1 about eligibility. The conflict is actually not even with the right section. If you read them together, which I think is logical, too, that you read them together and say they have to be the same, it's internally. There's an internal conflict and there's a conflict between the commentary and the text. Does that answer your question, or should I? Not clearly. I'm sorry. No, I think the limitation is mine. I was having a little trouble following the getting to the crystallizing the conflict because I'm not seeing why they can't be read consistently. Okay, I'll try to do it. So eligibility A1, B1 is extent in the text. The text doesn't say anything about excluding departures or variances. And that alone doesn't create any consistency? No, no. I think the text is consistent. Commentary comes along. The commentary to A1 adds the language at issue. No departure, no variance. Okay? The comment which does seem to conflict with A1, as this Court held in Munn, because leaving all other guideline application decisions unaffected, what is a departure or variance but a guideline application decision? 1B1.1 tells you the order to go through, and 4A1.3 precedes calculation of the guideline range. So there's one conflict. But then the other conflict is the fact that subsection 2, when you're talking about the extent of the departure, its commentary doesn't include that same language. That language – 1B1A doesn't make any mention of departures, does it? No, it doesn't. Why doesn't the phrase, shall leave all other guideline decisions unaffected, refer to decisions made establishing the amended guideline range, which, pursuant to 1B1A, does not take into account departures or variances? Why isn't that the simpler, more linear reasoning? Because subsection B1, when you're talking amended guideline range, is consistent with its commentary to B1, which says all other guideline application decisions remain unaffected. And in MUN, this court held that means 4A1.3. Does that answer it? Well, it gets back to the conundrum in which I find myself. Your interpretation is also influenced by our holding in MUN, which is the holding that's in question. Well, not all of MUN has to be thrown away. Okay. Even if you say that Amendment 759 abrogated MUN, the reasoning for MUN about how the application instructions inform 1B1.10 are still good law. And that was the hook. I see I'm out of time. In A6, right? Yes, in A6, the sixth step. Okay. Thank you. Thank you very much. Please proceed. Thank you very much, Your Honor. May it please the Court. My name is Sujit Raman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Your Honor, so the Court will indulge me. I'll do my best to try to address the textual issues in this case, because while the legal issues are somewhat complex, you've got to jump from the statutory text, which is 3582C2, to the guideline policy statement, which is 1B1.10, and then to the commentary, and then the statement of reasons. Ultimately, we respectfully submit that the Court's job here is to construe all of this language and not to condemn it. So let me, if I could, provide the framework that I would respectfully submit to the Court as really the way to look at this case. Could I just say? Yes, Your Honor. I'm sorry, but it does seem to me that there is no dispute based on appellant's argument. There doesn't appear to be any dispute about the fact that, indeed, the sentencing commission can abrogate contrary circuit precedent. Yes, absolutely correct. The only issue is whether it has done so in this case, in this instance. Right. And so I think you don't need, I'm simply suggesting that in presenting your argument, you don't need to start as broadly as justifying the commission's authority to do, to abrogate certain precedent. Thank you, Your Honor. And let me get right to your point. So when the sentencing commission enacted Amendment 759 in 2011, in the reason for amendment, which is the Appendix C, the Court knows what I'm talking about, it actually laid out, this is at page 420 and page 421 of the supplemental book, laid out exactly what it was thinking in terms of the circuit split between this Court and the Second Circuit on the one hand and all the other circuits on the other hand. At the top of page 421, again, this is Appendix C, Volume 3, dated November 1, 2011. The commission said, consistent with the three-step approach adopted by Amendment 741, which is what set out the three-step process for sentencing, and reflected in 1B1.1, the amendment, this amendment, adopts the approach of the Sixth, Eighth, and Tenth Circuits and amends Application Note 1 to clarify that the applicable guideline range referred to in 1B1.10 is the guideline range determined pursuant to 1B1.1a, which is determined before consideration of any departure provision in the Guidelines Manual or any variance. So that is the clear textual support, Judge Duncan, of what the Sentencing Commission was doing when it enacted Amendment 759. And I take it that your opponent's rejoinder to that would be that you can't come up with that range until you've gone through at least the first six steps. Right. So my response to that, Your Honor, is to look at the policy statement 1B1.1. And Your Honor is correct that 1B1.1a has a whole list of steps. I think it's eight steps. And then you go to 1B1.1b. Now, the first time the word departure ever appears in 1B1.1 is in subsection b. All right. After having gone through all the steps in 1B1.1a, this is b, the court shall then consider parts H and K of Chapter 5, specific offender characteristics and departures, and any other policy statements or commentary. So the first time we talk about departures is in b, after the entire exercise that's undertaken in 1B1.1a. If I could go further, Your Honor. What the appellants have not mentioned is the commentary to 1B1.1, if the court is still with me. Commentary note 1e very clearly defines the term departure. Okay. This is commentary note 1e. Departure means, and this is subsection 2, for purposes of section 4a1.3, which is what we're talking about, the criminal history departure. Assignment of a criminal history category other than the otherwise applicable criminal history category in order to effect a sentence outside the applicable guideline range. So the definition of departure, which is what we're talking about here, specifically encompasses effecting a sentence outside the applicable guideline range. So what that means, Judge Agee, is that you apply the 4a1.3 departure after you have already calculated the, quote, applicable guideline range. And so that is my answer. In order to get to that range, whether you have an under or over representation, does that calculation have to be made first? I think the calculation is first undertaken, again, pursuant to 1.1a. And while there is a reference at Step 6 to, quote, determining the defendant's criminal history category as specified in Part A of Chapter 4, the point there is, you know, Chapter 4 is divided into three sections. There's 4a1, 4a2, and then 4a3 is the departure. I think what the Commission is referring to here when it says determining the criminal history is to the first two provisions, it's 4a1 and 4a2. And that's what the Sixth Circuit held in the Watkins case, which we've cited in our pleading, decided just a couple months ago, where the Sixth Circuit observed, I'm sorry, it's the Second Circuit, it's in Montanez, and this is at page 293 of the Second Circuit's opinion, where the Court talks about how the argument that the defendants are raising in this case doesn't really make any sense because when you look at Steps 1 through 4 of 1b1.1a, referring to Chapters 2 and Chapter 3, there are a number of departure provisions in both of those chapters. And so under the appellant's reasoning, it would, to use the Second Circuit's phrase, this argument is staggeringly broad. It's of staggering breadth because under their theory, you would have to apply all of these departures under Chapters 2 and 3 in 1b1.1a, which doesn't make any sense because then it doesn't jive with 1b1.1b. So you've got all the other provisions, all the other chapters, Chapters 2 and Chapter 3, all the departure provisions which don't apply, and everybody agrees on that. That's the first argument. The second argument is, as I said, and this is what the Sixth Circuit observed in Watkins, and I just want to make sure I get my language exactly right. The, when it's referring to Chapter 4, when it's the Step 6 reference, let me just read directly to the Court. This is from Watkins. The defendant's position would have more force if the instruction was to consider every subsection of Part A of Chapter 4. After all, two of Section 4a1's subsections tell courts how to compute the defendant's criminal history category. The other, which is Section 4a1.3, does not. It contains the standard for criminal history category departures. As the Sentencing Commission has explained, courts should consider departure provisions only after determining the guideline range. Section 1b1.1a's instruction to look to Part A of Chapter 4 is not also an invitation to consider Part A provisions that bear no relation to that task. So that's the Sixth Circuit judge directly addressing your question, saying when Step 6 tells you to look at Chapter 4, look at the portions of Chapter 4 that actually make sense, which is the first provision and the second provision. The third provision, which relates to departures, doesn't kick in until you get to 1b1.1b. Are you going to directly address the conflict that appellant says preserves mine? Yes, Your Honor. The text, whether the text, specifically whether the text in the commentary conflicts. Yes, Your Honor. So in the government's view, there is no conflict. And let me address directly why. So I'm looking at 1b1.10b, which is the relevant policy statement. As I understand it, the defendants believe that the conflict arises under that very last sentence. And I'm sorry to keep reading to the court, but let me just read it again. In making such a determination, the court shall substitute only the amendments listed in subsection D for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected. Now, again, if their argument is that this language about leaving all other guideline application decisions unaffected. Which I think is what, which seems to me to be the focus of the argument. Yes. Now let me, and I apologize, the Sixth Circuit has directly addressed that point. And this is in the Watkins decision. And I apologize, but let me just read to the court. Watkins also points to language in 1b1.10b1 that all other guideline application decisions are unaffected, etc. He takes this to mean that an amended guideline range must take into account downward departures. Here's the Sixth Circuit's holding. Not only does that interpretation directly contradict the guideline commentary, now let's put that aside, but it has no grounding in the text whose meaning it purports to explain. As is clear from language and context, that phrase does none of the heavy lifting that Watkins and the appellants in this case want. Section 1b1.10b1 gives step-by-step instructions for how to determine a defendant's amended guideline range. The unaffected clause, and this is the key point, simply reminds courts that Section 3582c2 does not also grant license to re-examine other components of past sentencing decisions. So other guidelines provisions that may have been at play, the whole point of this unaffected language is to tell the sentencing court you can't revisit any of those. All you can do is essentially replace the amended guideline range for the applicable guideline range. Do we have any interpretive canons that apply to the sentencing guidelines? For example, we presume... For example, the constitutional avoidance canon, the presumption that statutes are valid. Do we have any rules of construction that aid us in our determination? Do we presume there's a conflict? Do we presume there's not a conflict? Is there any navigational aid that would help us? So I think the most useful canon, Your Honor, is the general statutory principle that when courts are looking at text, their goal is to try to harmonize what the relevant actor was trying to do. It's a purposive approach. Presumably when Congress and when the Sentencing Commission, which is more important here, is acting, it's acting to do something. It's doing something rationally. And so the question is, what is the goal? You know, purposively, what is the Commission trying to do when it amended Section 759, Amendment 759, in 2011? And that's where the reasons for amendment, I think, are very helpful. Because the Commission essentially told the courts, this is what we're trying to do. We're trying to actually add clarity to the issue because of the circumstances. But it seems to address as well the clarifying substantive distinction. Yes. It makes it pretty clear it's a clarifying amendment, not a substantive amendment. That's right, Your Honor. And Judge Duncan, I think you make a very good point. And I would like to point the Court, I mean, to the commentary. You know, the appellants insist that there's a conflict here. I mean, I think it's actually pretty clear what the Commission was trying to do. I'm reading Note 1A. This is the language that the Commission inserted in 2011. Eligibility for consideration under 3582C is triggered only by an amendment listed in Subsection D. All right. That lowers the applicable guideline range. Okay. I.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1.1A, which is determined before any departure provision, including 4A1.3. Now, let's cross-reference 1B1.1A, right? The commentary defines departure, and it defines departure to include 4A1.3. So when Your Honor asked me the question, you know, what is your task here, I think the Court's task, difficult and somewhat tedious as it may be, is to try to parse through all these materials and try to make sense of them. Now, if they don't make sense or if everything's ambiguous, potentially we have a problem. But I think when you actually try to put all these pieces together, it is pretty clear what the Commission was trying to do. I'd note one other point, and this is something the Montañez Court, the Second Circuit, noted, and it's not something that really has come up in the argument. You do also have to look at Commentary Note 3 to 1B1.10. Now, this directly addresses the question of the application of Subsection B2, right? One of the examples in that commentary is, quote, if the term of imprisonment imposed was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in Subsection B2a also applies. So in other words, if the defendant received a below-guidelines or above-guidelines sentence at the original sentencing, the sentencing court is still limited by the provisions under 3582C2. Here's the point. Thus, if the term of imprisonment imposed in the example provided above was not a sentence of 70 months, which would have been within the guidelines, but instead was a sentence of 56 months, and this is the key language here, constituting a downward departure or variance, the court likewise may reduce the term of imprisonment. As the Second Circuit observed, quote, this example implicitly acknowledges that courts grant departures from the applicable guideline range, from it, rather than when calculating that range. So in other words, that example, where the 56-month sentence was outside of the guideline range, is provided as an example of a downward departure. And that's exactly the point. If you are sentenced below the guideline range, that means you have departed from the applicable guideline range. And the term applicable guideline range, as the Second Circuit noted in Montañez, is a term of art in this context. That's why the Sentencing Commission, with Amendment 759, specifically defined that term, right? And that term, when you cross-reference Section 1B1, in our view, clearly takes into account pre-departure. It does not take into account post-departure calculations of the criminal history category. So I hope that has answered the court's questions. I know it's a little bit, it is a little bit difficult because these are difficult materials. But I think when you start with the statute, 3582C, you acknowledge the one exception, which is pointed out in 3582C2, that it's got to be consistent with the applicable policy statements. You then look at the policy statement, which here is 1B1.10, both Provision A and, most importantly, B1, which talks about the amended guideline range that would have been applicable. Applicable guideline range is a term of art. And so the question is, what is the applicable guideline range? When the Commission is using that term, what are they trying to say? Does it include criminal history departures? Our view, and we think the Commission's view, is the answer is no. And you look at the commentary note. Well, it's pretty clear what the Commission tried to do with the clarifying amendment. The question, I think, is, the question that has been presented is whether what it tried to do conflicts with the text. Right. So I don't think it conflicts with the text, and the Court understands my arguments, I think. I just don't think that last clause, the unaffected clause, really does all the work that the appellants think it does. Because, again, when you're engaging in the act of statutory construction, as I said before, the goal is to try to make sense of it. If it doesn't make sense, then it doesn't make sense. But if there is a way to make sense of it, I respectfully would submit that that is what the Court's role should be. And the way to make sense of it is to say that unaffected language refers to everything else. All the other departures, variances, you know, all the other guidelines, issues in the case are left unaffected. Because all you're doing as a sentencing judge, when you're looking at these 3582 motions, is to essentially substitute the amended guideline range, which is what the Commission has retroactively put into place, substitute it for what was the original applicable guideline range, which, as I say, is a term of art. And, Judge Agee, to get back to your original question, does not include 4A1.3 departures because the commentary to 1B1.1, and under Stinson commentaries are authoritative, right? They have the force of law. Under the commentary, 4A1.3 by definition is a departure. It is not part of the first eight steps under 1B1.1a. So that's the way I think, Judge Duncan, you harmonize all of the legal materials that we've been talking about. As the Ornelas Court, the Ninth Circuit, which addressed this issue recently, pointed out, statements of reason or reasons for the amendment also provide guidance. They do, I don't know if they have the force of law in sort of the strong way that I'm suggesting, but they do look to guidance. This Court can certainly look to that material to get a sense of what the Commission was doing. And I think when you look at the reasons for the amendment, there's no dispute that the Commission was pretty clearly taking essentially a side on the dispute. We were trying to, certainly. Yes. If the Court has any other questions, I'm more than happy to answer them. Thank you. Thank you very much, Your Honor. Thank you, Your Honors. I respond to counsel's presentation that the one view in that sixth step for over and under representation is not to be taken into account under the commentary that he referenced. Well, we disagree with that. Well, I know you do. Yeah. I didn't quite understand how you could get to the seventh step, even reading the briefs and hearing him say it. You just don't get to the seventh step without applying, this Court held in Munn, without applying part. Can you answer without, at least answer with Munn and without Munn? Okay. That would help me so much. Yes. Application Instructions 1B1.1a say that in the, was it the fifth step, you apply Chapter 4, Part A. We're in the Chapter 4, Part A land. Now, he was right that you don't talk about a departure until you get after the guideline range. But departure is a term of, it says in that step, Chapter 5, Parts H and K. It specifically says what it means. Departure provisions look to Chapter 5. We are still back talking about a Chapter 4 departure before you get to Step 6. Step 5 is where you take into account the criminal history category under 4A1.3. Now, if the application instructions were worded differently, then the government might have, you know, like to stand on. But the way it is now, Chapter 4 is very specific. They didn't just say determine criminal history category. It says Chapter 4, Part A. Then when you come to the departure of variance, it says Chapter 5, and then after that is 3553A factors. To me, it's completely logical, and I don't see how it could be read to import Chapter 4 departure into a step after Step 7. So that's all a textual argument, not a month-specific argument? That's textual. That's not month-specific. Is there any ambiguity in your mind about what the Sentencing Commission thought it was doing or was trying to do? Not at all. So did it succeed as a clarifying amendment that would be binding that is not conflicted by the text? Because it was amazingly clear the extent to which it rejected month. It rejected Fourth Circuit. It rejected Second Circuit. So given that we know that that was what it was trying to do, and given the complexity of, and almost the deductive reasoning that has to go into either interpretation, why would we use that to conclude that there was a conflict which would render its efforts null? Because the Sentencing Commission knows how to abrogate circuit law. They know how to chain. Well, at least it did that. Well, it did do it in the Williams case where it amended the text of the guideline and abrogated this discourse. Commentary can be binding as well. Commentary can be binding. And so what you have to argue is the conflict. And what I'm saying is in deciding whether there is a conflict, is it at least not relevant that the commission understood itself to be acting harmoniously with what it found to be the correct interpretation? I have no doubt that it thought it was succeeding. Isn't that instructive is my only question because we're looking at competing interpretive arguments. I wouldn't say it's instructive. It is informative that that's what they tried to do, but they failed to do that here. And you don't have to look at Munn. You can look at Capers. We can't look at Capers. Your argument is that your argument has to be that there is a textual conflict. Yes. And there is for the reasons we talked about. One section, the commentary note says applicable guideline range is no departure, no variance. There is a conflict with the extent determination which says apply the range you did before, leave everything unaffected. The government kept saying we're trying to go below the guideline range. We are definitely not trying to go below the guideline range. We would have presented far different arguments. The applicable guideline range is including the 4A1.3 departure. The government also relies a lot on the Sixth Circuit, Second Circuit, Ninth Circuit. We're not in those circuits. Well, we also don't have to listen to district court opinions in Maryland. No. I think we're all just trying to wrestle with the text. Okay. So putting that aside, you asked for a canon of interpretation to help. And the Supreme Court in Freeman said that the point of 3582 and the point of 1B1.10 was to isolate whatever marginal effect a since-rejected guideline range had on a defendant's sentence. That was a Rule C plea case. That part is not relevant here. But the point of 3582, which Capers, Judge Wilkins held in Capers, where the commentary tried to undo this court's precedent, the court interpreted 3582 and said, the question for us is whether, I'm sorry, the answer. The answer in that case depends on whether the sentencing range referred to by the sentencing commission is the range intended by the commission or the range actually applied by the district court. We hold that sentencing range is the range actually applied by the district court. So in that case, there was a question about the enhancement, whether it had actually been applied the way the sentencing commission wanted it to work. The sentencing commission amended the commentary. And when it came back up on appeal, the Fourth Circuit said, we don't care what the sentencing commission intended. We cared what actually happened. I think Capers answers that question. To the extent you consider the sentencing commission's intentions instructive, they are trumped by what happened in the district court in that particular case. And that's Capers at page 474. And it goes on for pages about why what happened is what this court should look at, not what the sentencing commission intended. Unless there's any more questions. Thank you very much. We'll come down in Greek capsule and proceed directly to the next case.
judges: Allyson K. Duncan, G. Steven Agee, Bruce H. Hendricks